IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **CHOICE HOTELS INTERNATIONAL, INC.** <br> **Plaintiff,** <br><br> v. <br><br> **GOSLA FAMILY TRUST,** *et al.*, <br> **Defendants.** | 5:18-CV-00648-ADA |

## MEMORANDUM OPINION AND ORDER

Came on for consideration is Plaintiff's Motion for Summary Judgment filed on July 15, 2019. ECF No. 28. Plaintiff Choice Hotels International, Inc. ("Choice Hotels") moved for summary judgment against Defendants Gosla Family Trust ("GFT"), Gosla Family Living Trust, Dated June 16, 1999, a California Trust ("GFLT"), Yusuf Gosla, Individually and as trustee of the GFLT ("Yusuf"), Julekha Gosla, individually and as trustee of the GFLT and the GFT ("Julekha") (collectively "Gosla" or "Defendants") (ECF No. 28) on July 15, 2019, which the Court granted as to liability only on August 8, 2019. ECF No. 34. As to the remaining damages claims, the Court ordered supplemental briefing from the parties. *See id.* As the Court noted in its August 8, 2019, order, the Defendants failed to respond to Plaintiff's Motion. The Defendants also failed to provide supplemental briefing on the remaining issue of damages, and the time for doing so has expired.[1] Upon consideration, the Court orders that the Motion should be GRANTED.

**I.  BACKGROUND**

---

[1] This Court's local rules permit the Court to treat motions that have not been responded to as unopposed. However, the Fifth Circuit does not permit district courts to utilize local rules to grant summary judgment motions as unopposed based solely on a failure to respond. *See* ECF No. 34 (citing *John v. State of La.*, 757 F.2d 709 (5th Cir. 1985)).

1

Plaintiff Choice Hotels International, Inc. is in the business of franchising hotels. Kriendler Decl. ¶ 2, ECF No. 28-1 at 7. Plaintiff's brands include Cambria Suites, Comfort Inn, Comfort Suites, Quality, and Sleep Inn. *Id.* ¶ 3. Either Plaintiff, or its predecessor in interest, or both, have been offering lodging services under the Quality and Comfort family of marks for many years. *Id.*

On November 21, 2006, Plaintiff entered into a franchise agreement with Defendants. *Id.* ¶ 8. The agreement allowed Defendants to operate a Comfort Suites hotel franchise at 6350 N. Interstate 35, San Antonio, Texas ("Subject Property"). *Id.* On or around August 26, 2014, Plaintiff terminated the franchise agreement with Defendants because Defendants breached the agreement. *Id.* ¶ 9. On September 30, 2015, Defendants GFLT and Julekha Gosla, individually and as trustee of the GFLT, and Yusuf Gosla, individually and as trustee of the GFLT, entered into a Settlement and Release Agreement (the "2015 Settlement Agreement"). *Id.* ¶ 10. As part of the 2015 Settlement Agreement, Defendants GFLT, Julekha Gosla, individually and as trustee of the GFLT, and Yusuf Gosla, individually and as trustee of the GFLT, warranted as follows:

> Franchisees warrant that neither they nor any of their agents, employees, heirs or successors in interest are currently using Choice's trademarks and service marks, and also covenant and warrant that they will not in the future use those marks in any fashion except pursuant to a franchise agreement which may be entered into with Choice in the future.

*Id.* ¶¶ 10–11.

On October 8, 2015, Defendant GFT entered into another franchise agreement with Plaintiff (the "Franchise Agreement"). *Id.* ¶ 12; Pl.'s Ex. 37, ECF No. 28-1 at 106. Julekha Gosla signed the Franchise Agreement as trustee for Defendant GFT. Pl.'s Ex. 37, ECF No. 28-1 at 136. In the Franchise Agreement, she represented that she was the 100% owner of the

GFT. *Id.* at 137. She was also a guarantor to the Franchise Agreement. *Id.* at 138. The Franchise Agreement permitted Defendant GFT to operate a Quality Suites on the Subject Property. *Id.* at 106.

Defendant GFT ultimately failed to comply with the Franchise Agreement, and on June 28, 2017, Plaintiff sent a notice of default letter to Defendant GFT. Kreindler Decl. ¶ 13, ECF No. 28-1 at 13; Pl.'s Ex. 40, ECF No. 28-1 at 153. Defendants failed to cure the defaults, and on January 29, 2018, Plaintiff sent a notice of termination to Defendant GFT. Kreindler Decl. ¶ 14, ECF No. 28-1 at 13; Pl.'s Ex. 41, ECF No. 28-1 at 161. The letter demanded that Defendant GFT cease using Plaintiff's intellectual property. *Id.* After termination, Plaintiff discovered that Defendants were continuing to use the Quality and Comfort family of marks. Kreindler Decl. ¶ 15, ECF No. 28-1 at 13–14.

On May 16, 2018, Plaintiff sent Defendant GFT a cease and desist letter that instructed it to stop using the Quality and Comfort family of marks. *Id.*; Pl.'s Ex. 42, ECF No. 28-1 at 168–69. When Plaintiff sent the letter, Defendants were infringing by (1) using Quality Suites road and building signs, (2) answering the telephone and saying, "Quality at Rittman," (3) and advertising the Subject Property on several internet websites as either a Quality Suites hotel or a Comfort Suites hotel. Miller Decl. ¶ 3, ECF No. 28-1 at 25; Laas Decl. ¶¶ 7–9, ECF No. 28-1 at 17–18; Pl.'s Ex. 42, ECF No. 28-1 at 168–69. As of June 7, 2019, Defendants failed to remove the Quality Suites road and building signs advertising the property. Laas Decl. ¶ 10, ECF No. 28-1 at 19; Pl.'s Ex. 38, ECF No. 28-1 at 142–45. Additionally, as of June 13, 2018, the phones on the property were still being answered, "Good evening. We are having a good day at Quality at Rittman. Can I help you?" Laas Decl. ¶ 8, ECF No. 28-1 at 18.

On June 27, 2018, Plaintiff filed the instant action claiming Defendants are liable for (1) trademark infringement under the Lanham Act (15 U.S.C. § 1114); (2) false designation of origin under the Lanham Act (15 U.S.C. § 1125); (3) and trademark infringement and unfair competition under Texas common law. Pl.'s Compl., ECF No. 1.

Choice Hotels moved for summary judgment against Defendants on July 15, 2019. ECF No. 28 at 20. The Court granted summary judgment against Defendants, jointly and severally, as to liability on: 1) Plaintiff's First Claim for Relief for trademark infringement under the Lanham Act (15 U.S.C. § 1114); 2) Plaintiff's Second Claim for Relief for false designation of origin under the Lanham Act (15 U.S.C. § 1125); and 3) Plaintiff's Third Claim for Relief for trademark infringement and unfair competition under Texas Common Law. ECF No. 34 at 1. The Court, however, deferred any ruling on damages and ordered that the Plaintiff provide the Court with supplemental briefing on the issue. *See id.* at 15.

## II.  LEGAL STANDARD

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). In making a summary-judgment determination, the court should review all the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

"The moving party bears the initial burden of 'informing the Court of the basis of its motion' and identifying those portions of the record that 'it believes demonstrate the absence of a genuine issue of material fact.'" *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006) (quoting *Celotex Corp.*, 477 U.S. at 323). "Once the moving party meets this burden, the

nonmoving party must 'go beyond the pleadings' and designate 'specific facts' in the record 'showing that there is a genuine issue for trial.'" *Id.* at 164 (quoting *Celotex Corp*, 477 U.S. at 324. A party wishing to argue that a fact is genuinely disputed must support such an assertion by citing to particular parts of materials in the record or by showing that the materials cited by the opposing party do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1). If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion and, if appropriate, grant summary judgment. FED. R. CIV. P. 56(e).

## III. DISCUSSION

In this case, Plaintiff seeks lost profits, actual damages, attorney's fees, and costs of the action. Additionally, Plaintiff asks this Court to award treble damages and attorney's fees. The Lanham Act states, in pertinent part, that subject to the principles of equity, a plaintiff shall be entitled recover the following:

> (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action .... In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a). Treble damages and attorney's fees are available with respect to a trademark infringement in the nature of intentional and knowing "counterfeiting" under 15 U.S.C. §§ 1114, 1117(b). Despite the language of the statute, the right to any or all of the remedies is determined pursuant to the Court's appropriate exercise of discretion in its capacity

to do equity. *E.g., BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994).

No particular category, whether it be profits, damages, treble damages, or attorney's fees is required or for that matter prohibited in fashioning a remedy designed to redress the harm done. *Id.* at 1092–99; *see also Texas Pig Stands, Inc. v. Hard Rock Cafe International, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) (approving district court's refusal to accept jury determination regarding disgorgement of profits and reversing the district court's finding that the case was "exceptional," to justify award of attorney's fees). "Remedies are intended to make violations of the Act unprofitable, but not to act as a penalty." *Id.* at 1092.

    a. **Defendants' Profits**

Choice Hotels seeks an accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a), which allows a successful plaintiff in an infringement action "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." However, "an award of defendant's profits is not automatic." *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000). When considering whether to award defendant's profits, a court must consider the following non-exhaustive list of factors:

    (1) whether the defendant intended to confuse or deceive;

    (2) whether sales have been diverted;

    (3) the adequacy of other remedies;

    (4) any unreasonable delay by plaintiff in asserting [its] rights;

    (5) the public interest in making the conduct unprofitable; and

    (6) whether it is a case of palming off. *Id.*

Once an accounting of profits is determined appropriate, a markholder is only entitled to the profits attributable to the infringement. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554 (5th Cir. 1998). The burden is on the defendant to show that it made no profit from infringing on plaintiff's trademark. *Id.* at 555. Considering each factor in turn, the evidence favors awarding Choice Hotels a disgorgement of Defendant's profits.

### i. The Six *Seatrax* Factors

#### 1. Whether defendant intended to confuse or deceive.

In *Romag Fasteners, Inc. v. Fossil, Inc.*, the Supreme Court established that willfulness is not a prerequisite to an accounting of profits following a Lanham Act violation, but instead "a highly important consideration in determining whether an award of profits is appropriate." 140 S.Ct. 1492, 1497 (2020). An infringement is willful if done "voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion." *Quick Techs., Inc. v. Sage Group* PLC, 313 F.3d 338, 343 (5th Cir. 2002). Section 1117(a) of the Lanham Act "affords wide discretion to the district court to apply principles of equity when a claim for profits is made." *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 350 (5th Cir. 2002).

In *La Quinta Corp. v. Heartland Properties, LLC*., the defendant entered a licensing agreement to use the plaintiff's trademarks. 603 F.3d 327, 343 (6th Cir. 2010). Upon the agreement's termination, it expressly prohibited use of the plaintiff's marks. *Id.* When the agreement ended, defendants continued to display the plaintiff's trademarks even after receiving notice of termination. *Id.* The Sixth Circuit found that the defendant willfully infringed on the plaintiff's trademarks and acted in "deliberate defiance of the License Agreement." *Id.*

Here, Defendants acted in defiance of the 2014 Settlement Agreement, the 2015 franchise agreement, notice of termination of the 2015 franchise agreement, and the May 2018 cease and

desist letter. The express terms of both franchise agreements entered by Defendants prohibited use of the Choice Hotels trademarks upon a breach. ECF No. 1 ¶ 66; ECF No. 1 ¶ 68. The 2014 settlement agreement between Plaintiffs and Defendants also expressly prohibited use of Plaintiffs' marks outside of a franchise agreement. ECF No. 1 ¶ 65. Additionally, Plaintiff notified Defendants of termination of the second franchise agreement and, upon Defendants' noncompliance, sent Defendants a cease and desist letter. ECF No. 1 ¶ 88.

This case is unlike *Choice Hotels International, Inc. v. Patel*, where a court found there was no intent to confuse or deceive. 940 F. Supp. 2d 532, 544 (S.D. Tex. 2013). In that case, the defendant undertook extensive efforts to remove the Comfort name from the hotel. *See id.* Here, by contrast, it is undisputed that Defendants undertook no efforts to remove the Comfort name from the hotel prior to this case being filed.

Defendants' previous dealings with Plaintiff's hotel franchise as well as Plaintiff's multiple demands provided Defendants with knowledge as to when they were no longer licensed to use Plaintiff's trademarks. Moreover, this Court determined that Defendants' outright use of Plaintiffs' trademarks was likely to cause confusion to consumers. ECF No. 34 at 7. Thus, the undisputed evidence demonstrates that Defendants willfully infringed on Plaintiffs' exact trademarks to profit from the QUALITY and COMFORT namesakes.

### 2. Whether sales have been diverted

Under this factor, courts look to whether the plaintiff presents evidence showing its sales are diverted to the defendant. *See Patel*, 940 F. Supp. 2d at 545. In the context of hotels, a plaintiff may prove this factor by showing that "one of its competing hotels existed in [the same city] that guests could have stayed at instead of the subject property." *See id.*

Here, Defendants used Plaintiff's marks without permission for 130 days to advertise their hotel. ECF No. 35 at 4. Defendants' choice to enter into multiple franchise agreements with Plaintiff indicates that their hotel profited from adopting the QUALITY and COMFORT trademarks. Further, Defendants' hotel was operated as a Choice Hotels property for over eleven years. ECF No. 35 at 5. It is fair to say that travelers familiar with Choice Hotels' would choose to spend a night at Defendants' hotel because of their familiarity with the QUALITY and COMFORT brands. Defendants attracted these guests at the expense of legitimate San Antonio Choice Hotels' franchises, and thus diverted profits from Plaintiff.

Furthermore, Plaintiffs provided evidence that Choice Hotels has operated in some capacity since 1939 and is now one of the largest hotel franchisors in the world. ECF No. 1 ¶ 4. The pervasiveness of their marks suggests that Defendants diverted Plaintiffs' sales by marketing its hotel as a Choice Hotels property both online and in-person. Defendants offer no evidence to contest this assertion. Accordingly, the Court finds that Defendants diverted sales from Plaintiff.

### 3. The adequacy of other remedies

The Supreme Court defines remedy as "the means employed to enforce a right or redress an injury." *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 384 (1918). Plaintiffs calculated Defendants' profits to be $412,287.30 in gross room revenue for the 130-day infringement period. ECF No. 35 at 6. This number is 21 times more than the $19,171.36 in damages sustained by Plaintiffs for loss of the franchise agreement royalty fee. ECF No. 35 at 6. Based on the great difference between these amounts, Plaintiff asserts that no other means to adequately redress its injury is available than to award the gross room revenue. ECF No. 35 at 6.

Courts award an accounting of profits to remedy unjust enrichment and deter future infringement. *Quick Techs.*, 313 F.3d at 349. A business derives no benefit in entering a

franchise agreement if upon breaching the agreement, the business is only required to pay the original franchise royalty fee. As Plaintiff points out in its brief, "it would make economic sense for a party to take the risk of continuing to use the mark(s) until its infringement was discovered, knowing it would only then have to pay the same amount it would have been paid if it had been authorized all along." ECF No. 35 at 7.

Awarding only the lost royalty fee from the franchise agreement also unjustly enriches Defendant by allowing it to profit off of Plaintiff's marks without its permission. An accounting of profits properly redresses the injury suffered by Plaintiff and deters Defendants and other infringers from causing similar injury in the future.

### 4. Any unreasonable delay by Plaintiff in asserting [its] rights

The Notice of Termination was January 29, 2018, and the follow-up cease and desist letter was May 16, 2018. ECF No. 35 at 7. Plaintiff filed suit June 27, 2018. ECF No. 35 at 7. In six months, Plaintiff informed Defendants that the franchise agreement terminated, demanded Defendants to stop infringing its trademarks, and sought relief in court. Plaintiff timely asserted its rights. *See Patel*, 940 F. Supp. 2d at 546.

### 5. The public interest in making the conduct unprofitable

Infringers should not profit from their infringing conduct. *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 338 (5th Cir. 2008). As previously mentioned, if infringers only compensate markholders in the form of a franchise royalty fee, businesses will be encouraged to use franchisors' marks without permission so long as they can evade a franchisor's awareness. As long as the profits exceed a plaintiff's damages, then defendants will continue infringing. Public interest is best served by awarding Choice Hotels profits made by Defendants during the 130-day infringement period.

### 6. Whether it is a case of palming off

Palming off applies when an infringer "attempts to pass of its goods" as the markholder's. *Retractable Techs, Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 881 (5th Cir. 2019). Defendants used the exact QUALITY SUITES® and COMFORT SUITES® marks licensed to it pursuant to its franchise agreements with Plaintiff. ECF No. 1 ¶¶ 91, 92.

The uncontested evidence demonstrates that Defendants impermissibly marketed their hotel using Choice Hotels' trademarks. In *Choice Hotels Int'l, Inc. v. Patel*, the Court denied the plaintiffs an award of the defendant's profits because the defendant undertook extensive efforts to remove infringing signage from around its hotel. 904 F.Supp.2d 532, 546 (S.D. Tex. 2013). In contrast, Defendants in this case never made any effort to remove signage from around their hotel or eliminate online advertising using the QUALITY and COMFORT marks.

This case aligns more with *Choice Hotels Int'l, Inc. v. Bhakta*, where the court ordered defendants to disgorge profits when they continued operating their hotel as a Choice Hotel franchise after termination of the franchise agreement. Trademarks. No. *See* 2:11-CV-00411, 2013 WL 1403526, at *7 (S.D. Tex. Apr. 5, 2013). Like in *Bhakta*, Defendants' blatant disregard for Plaintiff's rights demonstrates that Defendant wanted to pass off its hotel as a member of the Choice Hotels franchise. Thus, the "palming off" factor is satisfied.

In considering the six factors, the Court finds that Plaintiff provided sufficient evidence to receive an accounting of Defendants' profits. Defendant did not provide any response or evidence to counter Plaintiff's assertions. Consequently, Plaintiff is entitled to an accounting of Defendants' profits as a matter of law.

### ii. An Accounting of Defendants' Profits

Once a court determines that an accounting of profits is appropriate, "a markholder is only entitled to those profits attributable to the unlawful use of its mark." *Pebble Beach*, 155 F.3d at 554. The Lanham Act states that the plaintiff is only required to prove the defendant's sales. 15 U.S.C. § 1117(a). The defendant "must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Additionally, the Supreme Court has held that a windfall to the plaintiff is permissible "where it is impossible to isolate the profits which are attributable to the use of the infringing mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942).

Plaintiff sought discovery of Defendants' profits from 2016 to the present, including the 130-day infringement period, to determine Defendants' profits for the period. ECF No. 35 at 8. Defendants never produced the requested information. ECF No. 35 at 8. Because Defendants failed to provide the requested information, Plaintiff calculated Defendants' sales using historical data that Plaintiff maintained regarding the monthly gross room revenue for Defendants' hotel in 2017. ECF No. 35 at 9. The gross room revenue for 2017 amounted to $1,157,579.90, which equates to a daily average of $3,171.44. Plaintiff multiplied the daily average by the 130-days of the infringement period to find that the gross room revenue during that period was $412,287.30. ECF No. 35 at 8.

Defendant provided no evidence of cost or deductions. The Court finds that the sum of $412,287.30 is an appropriate amount for profits during the 130-day infringement period.

### b. Plaintiff's Damages

Plaintiff requests liquidated damages, or, in the alternative, the lost royalty fees it was entitled to receive under the franchise agreement for the 130-day infringement period. ECF No. 35 at 9–10. The Court has not found any Lanham Act violation cases upholding a liquidated

damages provision. Choice Hotels' claim is better served through awarding it the lost royalty fees it was entitled to receive under the second franchise agreement.

Courts permit lost royalty fees as actual damages under the Lanham Act "on the logic that the plaintiff sustained damages equal to the profit they could have made" from a license to use the trademark. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017). This measure of damages is discretionary and is especially appropriate when the parties had a prior licensing agreement. *See Bhakta*, No. 2:11-CV-00411, 2013 WL 1403526, at *7 (S.D. Tex. Apr. 5, 2013).

Defendants failed to provide any information or records regarding gross revenue for the infringement period. Without access to this information, Plaintiffs used Defendant hotel's gross room revenue from 2017 to calculate its lost royalty fees. ECF No. 35 at 11. According to the Franchise Agreement, the royalty fee amounts to 4.65% of the preceding month's gross room revenue. ECF No. 35 at 11. In 2017, the average monthly gross room revenue was $96, 464.63, or $3,171.44 per day. ECF No. 35 at 11. Multiplied by the royalty fee rate, the average royalty fee per day amounts to $147.47, or $19,171.36 for the 130-day infringement period. Accordingly, because the parties had a prior licensing agreement, the Court finds that $19,171.36 is an appropriate measure of damages. *See Bhakta*, No. 2:11-CV-00411, 2013 WL 1403526, at *7 (S.D. Tex. Apr. 5, 2013).

### c. Treble Damages

Lastly, Choice Hotels seeks summary judgment for treble damages. An award of treble profits is not automatic. *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 826 (5th Cir. 1998). Section 1117(b) of the Lanham Act instructs courts to treble damages or profits if the violation consists of intentionally using a mark or designation with the knowledge that the mark is

counterfeit, unless the court finds extenuating circumstances. 15 U.S.C. § 1117(b)(1); *Patel*, 940 F. Supp. 2d at 547.

The Lanham Act states that a court should provide for treble damages when the defendant intentionally uses a mark, "knowing such mark or designation is a counterfeit mark" in connection with the sale or offering of goods or services. 15 U.S.C. § 1117(b)(1). The use of a genuine trademark, not merely imitations of the trademark, constitutes counterfeiting. *Rolex*, 158 F.3d at 826. If the original mark is attached to a product in a manner intended to deceive the public, "the product itself becomes 'counterfeit' just as it would if an imitation of the mark were attached.'" *Id.* (quoting *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894 (9th Cir. 1997).

*Bhakta* offers guidance as to the approach taken by other United States District Courts in Texas when trebling damages under the Lanham Act. 2013 WL 1403526 at *7. In that case, the Court awarded treble damages to the plaintiff because the Court found "no question that [defendants] were on notice that continued use of the trademarks after termination of the Franchise Agreement was prohibited." *Id.*

Similarly, in this case, there is no doubt that Defendants knew that use of the QUALITY and COMFORT marks was prohibited pursuant to both previously entered franchise agreements, the settlement agreement, the notice of termination of the franchise agreements, and the cease and desist. These warnings and notices illustrate that Defendants intentionally infringed on Plaintiffs' marks to advertise their hotel. Moreover, Defendants made no argument as to whether their conduct arose from "extenuating circumstances" pursuant to 15 U.S.C. § 1117(b).

Trebling the Plaintiff's profits of $412,287.30 equals $1,236,861.90, and trebling the Plaintiff's Royalty Fee damages figure of $19,171.36 equals $57,514.08. As a result, trebling damages and profits puts the possible award between $57,514.08 and $1,236,861.90.

### d. Attorney's Fees

In exceptional cases, the Lanham Act provides that a Court may award reasonable attorney's fees to the prevailing party. 15 U.S.C. § 1117(a). An "exceptional case is one in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate or willful, and has been interpreted by courts to require a showing of a high degree of culpability.'" *Rolex*, 158 F.3d at 824 (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1305 (5th Cir. 1997)).

In *Rolex Watch*, the Court refused to impose attorney's fees on the defendant because he did not attempt to palm off his products as plaintiffs' products, and "his advertising indicated that his products were not Rolex products and that [his company] was not affiliated with Rolex." *Id.* at 828. The Court found the defendant's actions not sufficiently egregious to qualify as an exceptional case under 15 U.S.C. § 1117(a). *Id.*

Here, the evidence demonstrates that Defendants willfully passed off their hotel as a Choice Hotels property once their license to use Plaintiffs' marks expired. Defendant took advantage of their access to the QUALITY and COMFORT marks and refused to comply with Plaintiff's repeated demands to remove any Choice Hotels signage from around the hotel property or online. Because Defendants willingly used Plaintiff's marks outside of their franchise agreements, Defendants' conduct is sufficiently egregious to be an exceptional case under the Lanham Act. Therefore, the Court awards Plaintiffs the attorney's fees of this action.

## IV. CONCLUSION

Upon consideration of all the evidence presented and the principles of equity, the Court **ORDERS** that Choice Hotels is **GRANTED** the following monetary relief: disgorgement of profits in the amount of $412,287.30, royalties as damages in the amount of $19,171.36, additional damages in the amount of $100,000, for a total damage award of $531,458.66, together with costs and attorney's fees.

SIGNED this sixteenth day of September, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE